UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PATRICIA WILLIAMS,                                    **FIRST AMENDED**
                                                      **COMPLAINT_____**

                                PLAINTIFF,            CASE NO: 19 CV 1353 (CM)(DCF)


                V.                                    <u>**JURY TRIAL DEMANDED**</u>



NEW YORK CITY DEPARTMENT OF
EDUCATION AND PAUL ROTONDO,
Individually, and in his official capacity as
Superintendent of Transfer Schools for the
New York City Department of Education,

                                DEFENDANTS.
----------------------------------------------------------X


        Plaintiff, Patricia Williams, by her attorneys, Advocates for Justice, Chartered Attorneys,

alleges:

1.  This is a complaint alleging discrimination and retaliation committed against Plaintiff

    Patricia Williams based on her sex and gender in violation of 42 U.S.C. § 2000e *et seq.*

    ("Title VII of the Civil Rights Act of 1964"), as amended by the Civil Rights Act of

    1991, and 42 U.S.C. § 1983 in violation of the Equal Protection Clause of the Fourteenth

    Amendment of the United States Constitution, and in violation of pendent New York

    State Human Rights Law (NYSHRL) and New York City Human Rights Law

    (NYCHRL) claims and other New York State common law claims, by Defendants

    Superintendent Paul Rotondo (Rotondo), in his individual and official capacity, and the

    New York City Department of Education (the NYCDOE or DOE).

1

2. On or about February 12, 2016, Superintendent Paul Rotondo, Plaintiff's supervisor, forced himself on Plaintiff, and tried to forcibly embrace her, pushing his crotch into her pelvis and would not let go. Plaintiff rebuffed his advances; thereafter, and as best as possible, Plaintiff attempted to limit any reason or opportunity Defendant Rotondo would have to be alone or interact with Plaintiff.

3. When Plaintiff made it clear to Defendant Rotondo she was rejecting him and/or when upon information and belief it became clear to Defendant Rotondo that Plaintiff was rejecting him, Defendant Rotondo began retaliating against Plaintiff Williams by every means possible for him to do so in the terms and conditions of Plaintiff's employment.

4. On or about October 1, 2018, as an example of Defendants' retaliatory actions, Defendants Discontinued Plaintiff as Principal and/or Principal in Excess and refused and/or failed to return Plaintiff to her reversion rights to Educational Administrator. Instead, Plaintiff was assigned as an ATR Teacher[1] to a school in Manhattan, New York, where she is currently employed by Defendant DOE.

5. As a result of Plaintiff Williams rebuffing the sexual advances of Defendant Superintendent Paul Rotondo in February 2016, Defendants retaliated against Plaintiff Williams in the terms and conditions of her employment including in her evaluations and in her tenure and promotional opportunities.

6. Defendants' retaliatory actions included the following adverse employment actions:

   a) Initiating internal investigations against Plaintiff Williams and therein making false allegations against her;

---

[1] ATR means Absent Teacher Reserve. These are a pool of tenured teachers and school staff displaced by budget cuts, school closures, or discipline infractions, from which the DOE assigns to available position postings or substitute openings or positions.

b) Threatening to close down the school that Plaintiff Williams managed – Crotona Academy Transfer High School, and then closing down that school, injuring her, its students, and the teachers Plaintiff supervised;

c) Refusing to assist or provide Plaintiff Williams with adequate personnel to allow her to do her job, thereby deliberately orchestrating attempts to sabotage Plaintiff's ability to succeed at her job;

d) Failing to allow Plaintiff Williams to complete her fourth (i.e., last) year of probation;

e) Discontinuing Plaintiff Williams for no rationale reason and without rational basis;

f) Deliberately undervaluing Plaintiff Williams' work performance to sabotage and ruin any opportunity for tenure should she have been considered for such;

g) Demoting Plaintiff Williams to Teacher rather than to her appropriate reversion right as an Educational Administrator – *i.e.*, two grade levels down, rather than to her rightful reversion position;

h) Failing to submit the required number of professional personnel reviews to Plaintiff Williams' personnel file for school year 2016-2017;[2]

i) Failing to provide Plaintiff Williams with a comprehensive professional improvement plan, including next steps, as required for developing evaluation grades;

---

[2] The failure of Defendant Superintendent to submit the required number of PPRs to Plaintiff's personnel file rendered the 2016-2017 MOLP superintendent's end of year "Developing" rating invalid.

j) Failing to provide and backdating one of Plaintiff's professional personnel reviews in an effort to support a false evaluation for discontinuance, which was never provided to Plaintiff before May 11, 2018.

7. These retaliatory actions were either known to Plaintiff Williams' employer, Defendant NYCDOE, should have been known to Defendant DOE, her employer, or can be attributed to Defendant DOE, her employer. Despite Defendant DOE's knowledge that Defendant Rotondo was engaging in retaliatory actions against Plaintiff Williams, Defendant DOE failed to remove Defendant Rotondo from directly supervising Plaintiff Williams, thereby causing Plaintiff Williams to suffer harm, and even greater and additional harm, both personally and professionally.

8. Defendants' discriminatory and retaliatory actions, inactions, and decision making caused Plaintiff to suffer substantial, severe, emotional injuries and professional and financial losses, including to her career and her reputation for which she seeks damages from Defendants jointly and individually.

9. Defendants continue to discriminate and retaliate against Plaintiff based on her sex and gender.

10. Plaintiff seeks a jury trial, declaratory, and injunctive relief, along with damages in an amount to be determined at trial.

## **PARTIES**

11. Plaintiff Patricia Williams is a Permanent Resident of the United States, and resides in the City and State of New York and within the District of the Southern District of New York.

12. Defendant DOE (the Department or the DOE) is legally known as The Board of Education of the City of New York (the Board or the BOE). The BOE is a corporate body

created by and existing under the laws of the State of New York pursuant to Sections 2551 and 2590 of the New York Education Law. Pursuant to various provisions of that law, including, *inter alia*, Sections 2554 and 2590-g, the BOE is charged with several responsibilities including administering and managing the educational affairs of the New York City School District and serving as the employer of all educators and principals hired to teach in and serve as administrators of the New York City School District.

13. In conjunction with amendments to the State Education Law enacted in 2002, most powers of the Board of Education but the power to ratify collective bargaining agreements as the statutory employer of personnel for the City School District of the City of New York, were diverted to the Chancellor, with the Board's administrative operations assigned to a body denominated by the Mayor as the New York City Department of Education (the DOE). The Board also conducts business as the Panel for Education Policy (the PEP).

14. Defendant DOE's central office is located at 52 Chambers Street, New York, New York 10007. For the purposes of this First Amended Complaint, the Board of Education, the Department of Education, the PEP, and the Chancellor, are collectively referred to as Defendant DOE.

15. Defendant Paul Rotondo is a Superintendent of Transfer Schools and works for the New York City Department of Education. He is being sued in his personal and professional capacity.

## JURISDICTION AND VENUE

16. Jurisdiction is proper and pursuant to 28 U.S.C. § 1331 *et seq.* and the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

17. On February 16, 2018, Plaintiff Williams filed a charge with the Equal Employment Opportunity Commission (EEOC) on the basis of sex and retaliation against Defendant DOE and named Defendant Rotondo as the alleged harasser and as also responsible in part (along with the DOE) for retaliating against Plaintiff Williams concerning *inter alia* the terms and conditions of her employment. *See* Exh. P-1.

18. Upon information and belief, Defendant DOE thereafter received notice of Plaintiff Williams' charge of discrimination against Defendant DOE and Defendant Superintendent Rotondo, by receiving a copy of Plaintiff's Notice of Charge filed with the EEOC.

19. In or about September 2018, Plaintiff Williams filed a second charge with the EEOC on the basis of retaliation against Defendant DOE and Defendant Rotondo for retaliating against Plaintiff Williams by notifying Plaintiff of her Discontinuance as a Principal, which involved demoting her in her position as Principal [and thereafter effectively demoting Plaintiff to the position of Teacher instead of to Educational Administrator (her reversion right pursuant to the Collective Bargaining Agreement)]. *See* Exh. P-2.

20. Upon information and belief, both EEOC charges were sent to Defendant DOE and their contents were made known to Defendant Rotondo.

21. On December 13, 2018, Plaintiff Williams received Right to Sue Notices for both EEOC charges permitting her to proceed with this action. *See* Exh. P-3 and Exh. P-4.

22. Venue is proper in the United States District Court for the Southern District of New York since, *inter alia*, Plaintiff resides in this District and the claims against Defendants arose in this District.

23. Plaintiff also served the City Comptroller with Notices of Claim under Section 52 of the New York General Obligations Law concerning the allegations of this action.

**FACTUAL ALLEGATIONS IN SUPPORT OF CLAIMS**

24. Since 2003, Plaintiff Patricia Williams worked for the New York City Department of Education, first as a Teacher, including as a Special Education Teacher, until approximately August 27, 2013. She then became an Educational Administrator until approximately August 31, 2015, whereupon she became a Principal.

25. On August 31, 2015, Superintendent Lashawn Robinson hired Plaintiff Williams as Interim Acting Principal of Crotona Academy High School (12X321), a Transfer High School.[3]

    i. Transfer High Schools are considered second chance alternative schools typically geared towards over-aged, under credited students who are significantly off-track for graduation and who experience social, emotional, and behavioral challenges. Transfer high schools provide personalized student educational plans, non-traditional learning environments, smaller class sizes, and community-based partnerships that provide counseling and work internship experience that allow students to receive the necessary academic and social emotional support needed to obtain work experience as well as earn the required credit amounts to graduate with a traditional high school diploma.

26. In June 2016, through the "C-30 process," which is the Chancellor's Regulation governing the selection, assignment, and appointment of principals and assistant

---

[3] Plaintiff Williams probationary period for principal was until August 31, 2019.

principals, Superintendent Rotondo assigned Plaintiff Williams as the "Principal Assigned" of Crotona Academy High School.

    ii.    The C-30 process requires that the open position should be filled within three months of the date of the posting.[4] Here, however, and upon information and belief, the position posting was made in August 2015; technically, according to the regulation, Plaintiff should have been assigned the principal position prior to June 2016.

27. Upon information and belief, Superintendent Rotondo failed to assign Plaintiff Williams as Principal to Crotona Academy until June 2016 in retaliation to her rebuffing his sexual advances.

**Sexual Harassment by Defendant Superintendent Paul Rotondo**

28. On or about February 12, 2016 Superintendent Paul Rotondo, Plaintiff's supervisor, forced himself on Plaintiff Williams. Plaintiff rebuffed his advances and thereafter as best as possible attempted to limit any reason or opportunity Defendant Rotondo would have to interact or be alone with Plaintiff.

29. When it became clear to Defendant Rotondo that Plaintiff was rejecting him, Defendant Rotondo began retaliating against Plaintiff Williams by every means possible for him to do so in the terms and conditions of her employment.

**Retaliation By Issuing Intentionally Low Performance Reviews**

30. In retaliation for rebuffing sexual advances Defendant Rotondo engaged in a series of negative performance reviews of Plaintiff Williams. In each instance, he purposely graded Plaintiff Williams' performance using low and/or developing standards to lessen

---

[4] https://www.schools.nyc.gov/docs/default-source/default-document-library/c-30-english.

and/or reduce Plaintiff's opportunities for advancement at Defendant DOE, including her opportunities for tenure, and purposefully ignored school data that indicated improvements had been made in areas rated poorly.

31. In so doing, Defendant Rotondo's deliberate objective was to retaliate against Plaintiff Williams, to discriminate against her, and to ensure that when the time came for her future performance reviews for tenure, or for consideration for a permanent position, since she was probationary in her title as Principal, Plaintiff would not succeed in the position determination.

32. Defendant Rotondo's retaliatory machinations in continually grading Plaintiff Williams' performance reviews using low standards were successful as they eventually led to Plaintiff Williams' Discontinuance as a Principal, which is explained *infra*. But first Defendant Rotondo ensured that he destroyed Principal Williams' reputation as an effective Principal in the school where she worked.

33. During the 2016-17 school year, Defendant Rotondo violated N.Y. Educ. Law 3012-C and 3012-D and the corresponding APPR regulations by not providing Plaintiff Williams with the minimum two required Principal Performance Observation (PPO) written reports for that school year. Nonetheless, Defendant Rotondo subsequently provided Plaintiff Williams his end of year rating MOLP (Measures of Leadership Practice) based on only one Principal Performance Observation written report.[5]

---

[5] On May 11, 2018 Defendant Rotondo subsequently had a Principal Performance Observation (PPO) written report dated March 17, 2017 of the previous year included as part of the supporting documentation for Plaintiff Williams' Discontinuance. The March 17, 2017 PPO Written Report was never provided to Plaintiff Williams prior to this time. Upon information and belief, the March 17, 2017 PPO was backdated to include it in the paperwork allegedly supporting the Discontinuance.

34. Defendant Rotondo scored Plaintiff Williams "Developing" for her 2016-17 end of year rating MOLP (Measures of Leadership Practices) end of year rating based on only one PPO report provided for the 2016-17 school year.

35. Plaintiff Williams received Effective APPR Overall End of Year ratings for three school years, serving as Principal: 2015-2016, 2016-2017, and 2017-18 school years. (The standards and criteria for conducting APPRs of building principals under Education Law § 3012-C and §3012-D requires building principals to be evaluated based on two categories: The Student Performance Category and the School Visit Category. The first is the MOLP (Measure of Leadership Practices), which is the score or rating provided by the Superintendent based on the two PPO ratings during the school year. The second calculation is comprised of the MOSL (Measure of Student Learning), which is based on the students' performance on standardized state examinations for that school year (see N.Y. Educ. Law §§ 3012-C and 3012-D/APPR regulations).

36. During the 2017-18 school year, Plaintiff Williams resubmitted the requested artifacts for the February 13, 2018 PPO visit to support the areas rated allegedly low (*i.e.*, developing or ineffective) that showed evidence of increased performance; however, Deputy Superintendent Sullivan, allegedly and on information and belief to be acting on Defendant Rotondo's behalf, deliberately ignored this information when he considered her performance and when he complete her evaluations; all areas were wrongfully and falsely rated "Developing" or "Ineffective."

37. During the 2017-18 school year, for the October 23, 2017 PPO, Plaintiff Williams also requested of Defendant Rotondo that she receive feedback and that "next steps" be provided to her to address indicated areas of weakness in order to use the

recommendations to guide instructional practices. However, Defendant Rotondo failed to

provide Plaintiff Williams with additional, comprehensive feedback, next steps, or

recommendations, again, in retaliation to her rebuffing his sexual advances and in

furtherance of his desire and plan to ruin her career opportunities with Defendant DOE.

**Retaliatory Quality Review of Crotona Academy**

38. On May 4, 2017 and May 5, 2017, a Crotona Academy Quality Review (QR) was

conducted for the 2016-17 school year. Upon information and belief, the original ratings

for QR provided on May 5, 2017 were negatively changed after the QR evaluator

consulted with Defendant Rotondo. The initial QR results issued on May 5, 2017

indicated seven rated areas as "Proficient" and three areas rated as "Developing."

39. On July 18, 2017, the QR evaluator called Plaintiff Williams and informed her that the

May 5, 2017 QR ratings would be changed to six areas rated "Developing" and four areas

rated "Proficient."

40. The following week on July 25, 2017, Defendant Rotondo conducted the end of year One

on One Meeting with Plaintiff Williams where a review of 2016-17 school year and

planning discussion for the 2017-18 school year was conducted. Plaintiff Williams

inquired if Defendant Rotondo had anything to do with the change in her QR rating.

Defendant Rotondo strongly implied to Plaintiff Williams that he did.

41. Upon information and belief, the QR ratings were used as evidence by Defendant

Rotondo in his recommendation to Defendant DOE to close Crotona Academy and as

evidence of Plaintiff Williams' alleged poor performance and as evidence in support of

Plaintiff Williams' Discontinuance. Defendant Rotondo therefore took intentional and

active measures to ensure the QR rating results were lower than originally rated on May 5, 2017 to retaliated against Plaintiff Williams.

**Retaliation in the Closure of Crotona Academy**

42. Crotona Academy was the only Transfer High School selected by Defendant Rotondo for complete closure.

43. Crotona Academy, however, had been identified as a School in Good Standing by the New York State Education Department ("NYSED") for the prior three (3) years including the year Defendant Rotondo decided to close the school.

44. During the 2016-17 school year, Crotona Academy was relocated from its previous school location (where students were previously housed and instructed in temporary structures, i.e., trailers) to its new location within a school building. The purpose of the school relocation was to provide students the opportunity to be educated within a school building with new amenities to support their instructional needs.[6] However, Defendant Rotondo selected the Crotona Academy for closure in February 2018, which was less than 2 years after the school had moved into its new building. Plaintiff Williams therefore was provided with less than 2 years in the new school location to improve school performance before being provided with notice that the school would close and she would be discontinued as principal.

45. Defendant Rotondo selected Crotona to be closed in February, four (4) months prior to the end of the 2017-18 school year.

---

[6] During that relocation, Defendant Rotondo deliberately refused to provide Plaintiff Williams with sufficient assistance to accomplish the move into the new building during the summer of 2016, forcing Plaintiff Williams to complete much of the physical labor of the moving process herself. Again, this refusal of assistance was further retaliation against Plaintiff Williams by Defendant Rotondo.

46. Upon information and belief, Defendant Superintendent Rotondo advised Plaintiff Williams that he was going to close her school in retaliation for rebuffed sexual advances.

47. In August 2017, prior to the start of the 2017-18 school year, Defendant Rotondo instructed Plaintiff Williams to stop admitting students for the upcoming school year to Crotona. In addition to this directive in August 2017, an Over the Counter (OTC) flag was assigned on ATS to prevent the enrollment of students at Crotona.[7] These instructions to stop admitting students caused Crotona to have a lower enrollment throughout the 2017-2018 school year.[8] Because enrollment is a major factor that Defendant DOE considers when making a decision whether to close a school, these directives placed Crotona at an unfair position as compared with other schools. Plaintiff Williams was the only Transfer High School principal to be given the directive to stop admitting students.

48. Further, Crotona Academy was the only Transfer High School not permitted to actively conduct Open House recruitment and enrollment during a critical time for school enrollment. This prohibition limited the number of students who could enroll and thereby limited the number of students permitted to graduate in the 2017-2018 school year.

49. Crotona Academy High School was not indicated on the list of schools to close for the 2017-18 school year until February 2018, and was purposefully selected by Defendant

---

[7] The ATS (Automate The Schools) is the school-based administrative system used by all New York City public schools since 1988. It has many functions, including recording biographical data for all students, handling admissions, discharges, and transfers to other schools, and recording other student-specific data, such as exam scores, grade levels, attendance, and immunization records. It also provides aggregate student and human resources data to school administrators.
[8] Although Crotona had low enrollment, it had higher enrollment than previous years due to enrolling many more students in February 2018.

Rotondo. Crotona Academy was identified by NYSED as a School in Good Standing for the 2015-16, 2016-17, and 2017-2018 school years. There were at least three other schools in the Bronx that were identified by NYSED as "in need of improvement" and identified as "Focus" or "Priority" schools. Defendant Rotondo did not select any of these Transfer Highs Schools for closure although they had been identified as "Priority" or "Focus" (low performing schools by NYSED standards) for several years in a row. Crotona Academy was the only school identified In Good Standing to be closed by Defendants.

50. Crotona Academy data indicated the increase in overall student attendance during the 2017-18 school year; data also showed evidence that school performance increased while Plaintiff Williams served as Principal of Crotona Academy High School from 2015-16 to 2017-18. This included school year 2017-18 showing the highest number of students registered at Crotona in the eleven-year history of Crotona Academy HS; the period from 2015-16 to 2017-2018 indicated the highest level of enrollment and graduation for Students with Disabilities and English Language Learners; 2017-2018 showed the highest level of school funding in the areas of FAIR STUDENT FUNDING and grant funds awarded to the school; NYSED also identified Crotona as a School In Good Standing; Crotona had a record high attendance rate during the 2017-18 school year in student attendance, and 2017-18 school year had the highest number of students graduating in the history of Crotona Academy.

51. Defendant Superintendent Rotondo retaliated against Plaintiff Williams by purposefully ignoring the above notable school performance gains in his 2017-2018 PPO and/or

MOLP ratings of Plaintiff Williams, and when the decision was made to discontinue Plaintiff Williams as Principal.

**Retaliatory Internal Investigation Based on False Allegations**

52. An Office of Special Investigations (OSI) charge was issued against Plaintiff Williams in approximately February 2017 regarding an improper program scheduling of courses. Upon information and belief, the allegations of misconduct were initiated by Defendant Rotondo. However, due to email evidence provided to the investigator by Plaintiff Williams regarding the allegations in question, indicating Plaintiff Williams had followed the directives provided by the Office of the Superintendent, in March 2017, the OSI case was closed and the charges were found to be unsubstantiated.

53. Within weeks of the initial OSI case being closed, another OSI case was opened essentially charging the same allegations. Upon information and belief, the second charge of misconduct was also initiated by Defendant Rotondo. On this second occasion, Plaintiff Williams was not provided the opportunity to refute the charges. As a result, this case was "substantiated" in June 2017. At this time, Defendant Rotondo informed Plaintiff Williams that she was to be issued a Letter to File as a disciplinary measure. The Letter to File, however, was not permitted to be submitted into Plaintiff Williams' personnel employee file because the time limit for doing so had expired.

**Retaliatory Discontinuance**

54. Upon information and belief, after being notified that Plaintiff Williams had filed an EEOC action of sexual harassment and retaliation against him in February 2018, Defendant Rotondo provided Plaintiff Williams with a Notice of Discontinuance on May 11, 2018.

55. Although the notice indicated that the discontinuance would be effective at the end of the school year, namely, on June 31, 2018, Plaintiff Williams was previously directed on June 13 by Defendant Superintendent Rotondo to continue as Principal of Crotona Academy students to oversee the Summer School and to address the transitional needs of students and parents due to the closure of the school.

56. Crotona Academy students, during the months of July and August, were to take Regents examinations. Plaintiff Williams was required to oversee these examinations at two different schools, and to submit required Appeals and Superintendent's Determinations to allow students to graduate during the summer.

57. During the summer months, Defendant Rotondo provided Plaintiff Williams with directives regarding her discontinuance. Defendant DOE emailed Plaintiff Williams two versions of proposals to agree to hold in abeyance the discontinuance for a period of time no later than October 1, 2018 to allow the EEOC allegations made by [Plaintiff] to be investigated, one on June 13, 2018 and the other on June 21, 2018 for a period of time no later than October 1, 2018 to allow the EEOC allegations made by [Plaintiff] to be investigated and indicated that "the parties agree that [Plaintiff] has a completion of probation date of September 1, 2019." Defendant DOE failed to keep this agreement.[9]

58. On August 27, 2018 First Deputy Chancellor Cheryl Watson-Harris notified Plaintiff Williams via email that she would be assigned as Principal In Excess for the 2018-2019 School Year, effective August 30, 2018.

59. Although Plaintiff Williams was provided a new Principal assignment for the 2018-19 as Principal in Excess by First Deputy Chancellor Cheryl Watson-Harris effective August

_____

[9] Defendant DOE also issued a discontinuance proposal to be effective no later than October 15, 2018. Defendant DOE failed to keep this agreement as well.

30, 2018, Defendant Superintendent Rotondo informed Plaintiff Williams that she would be discontinued effective October 1, 2018.

60. The supporting documentation for discontinuance provided on May 11, 2018 was used to support the September 21, 2018 Notice of Discontinuance for October 1, 2018. The 2017-18 Effective APPR Overall End of Year rating received for Plaintiff Williams, in addition to the Effective APPR ratings to the 2015-16 and 2016-17 school years, were not taken into consideration in discontinuing Plaintiff Williams.

61. The significant gains showed for the 2017-18 school year in Crotona's school performance in student graduation, attendance, and enrollment, as well as the other school performance gains evident while Plaintiff Williams served as Principal, was not taken into consideration in the Discontinuance decision made during the 2018-19 school year. Nor were the performance gains made from the 2015-16 school year to the 2017-18 school year taken into consideration in the Discontinuance decision.

62. On May 11, 2018 in addition to Plaintiff Williams being notified of her Discontinuance, Deputy Superintendent Sullivan conducted a third PPO visit for the 2017-18 school year. Although significant school performance gains were evident during the 2017-18 school year, the results of the May 11, 2018 PPO were rated ineffective or developing in all areas rated with no areas rated effective even though evidence was provided of school performance gains made during the 2017-18 school year.

63. On May 11, 2018 Defendant Rotondo subsequently had Deputy Superintendent John Sullivan issue Plaintiff Williams a Principal Performance Observation (PPO) written report dated March 17, 2017 of the previous year included as part of the supporting documentation for Plaintiff Williams' Discontinuance. The March 17, 2017 PPO written

report was never provided to Plaintiff Williams prior to that time. In other words, and upon information and belief, the PPO was backdated to March 17, 2017 in order to include it in the Discontinuance paperwork.

**Discontinuance Deliberately Timed to Deprive Plaintiff of Salary Increases and Bonus**

64. Defendants deliberately timed the Discontinuance for Plaintiff Williams to be effective October 1, 2018 to deprive Plaintiff of salary and bonus opportunities, intentionally accomplished as a retaliatory measure. On October 6, 2018, a four percent (4%) general wage increase would have been implemented that would have increased Plaintiff Williams' annual principal salary by $17,000. Further, an additional twenty-five percent (25%) lump sum ratification bonus payment went into effect February 6, 2019. Defendants deprived Plaintiff Williams of this bonus as well.

65. Plaintiff Williams' probationary period as Principal officially was to end as of August 31, 2019; however, due to retaliatory measures, Plaintiff Williams was not permitted to complete her probationary period in spite of notable school performance gains made during her tenure as Principal of Crotona Academy.

66. On October 1, 2018 Principal Williams was discontinued as a Principal. Plaintiff Williams' reversion rights to the position she held prior to becoming a Principal was as an Educational Administrator. Defendants retaliated against Plaintiff Williams by effectively demoting her two positions down from the position of Principal, assigning her to the position of an ATR Special Education Teacher and depriving her of a salary at the Educational Administrator's level.[10]

---

[10] The Absent Teacher Reserve (ATR) is a pool of tenured teachers and school staff displaced by budget cuts, school closures, or discipline infractions assigned to work as substitutes within Defendant DOE without permanent placement. This action was in violation of the union

67. Despite being advised of the discrimination and retaliation suffered by Plaintiff Williams, Defendants DOE and Rotondo failed to take any action to remedy their wrongful conduct. Instead, their retaliatory conduct continued and indeed became exacerbated by the most recent demotion/discontinuance to the position of Teacher instead of the position of Educational Administrator, which was undertaken in retaliation for complaints of discrimination, and further, without rational basis and without cause.

## COUNT I

## Title VII and NYSDHR Against Defendant DOE

68. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 67 as if contained herein.

69. Plaintiff is an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

70. Defendant DOE is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

71. Defendant DOE is an employer within the meaning of the NYSHRL, N.Y. Exec. Law, § 292(5).

72. Plaintiff Williams is a person aggrieved within the meaning of the NYSHRL, N.Y. Exec. Law, § 292 (1) and applicable case law.

73. By its actions described above Defendant DOE has discriminated and retaliated against Plaintiff Williams, on the basis of her sex and gender and for complaining about discrimination and/or resisting discrimination (sexual harassment) in violation of Title VII and the NYSHRL.

74. The discriminatory and retaliatory conduct of Defendant Rotondo, as Plaintiff's supervisor, was known to Defendant DOE, or should have been known to Defendant

---

contract. [There is an ongoing grievance procedure regarding this violation of the union contract between the union and Defendant DOE regarding the grievant [*i.e.*, the Plaintiff].

DOE, or such knowledge is attributed to DefendantDOE, and therefore Defendant DOE is liable for Defendant Rotondo's discriminatory and retaliatory actions, inactions, and decision-making, on the basis of sex and gender in violation of Title VII and NYSHRL.

75. As a result of Defendants' discriminatory and retaliatory actions, inactions and decision-making, Plaintiff Williams has been injured, has suffered and will continue to suffer personal injury and professional injury, including lost wages (including but not limited to her discontinuance as Principal made effective five days before the four percent (4%) general salary increase as Principal would be implemented) (*e.g.*, not permitted to complete her final probationary year period to serve as Principal; unable to be promoted within the professional structure of the Department, the Civil Service structure, and the collective bargaining agreement, including being considered for tenure), and emotional distress in amounts to be determined at trial.

76. Upon information and belief Defendants' actions, inactions, and decision-making were engaged in with malice and with reckless indifference to Plaintiff's statutory rights, entitling her to punitive damages under Title VII and the NYSDHR.

**COUNT II**

**Equal Protection Under § 1983 – Retaliation:**
**Defendant Rotondo in his Individual Capacity**

77. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 76 as if contained herein.

78. Defendant Rotondo unlawfully retaliated against Plaintiff Williams for opposing sex-based harassment, discrimination, and retaliation.

79. Defendant's retaliation deprived Plaintiff Williams of her right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution.

80. Defendant's conduct caused Plaintiff to suffer damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

## COUNT III

### Supervisory Liability Under § 1983 – Retaliation:
### Defendant Rotondo in his Individual Capacity

81. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 80 as if contained herein.

82. Defendant Rotondo directly participated in retaliation against Plaintiff for sex-based harassment, discrimination, and retaliation; failed to remedy retaliation against Plaintiff Williams after being informed through reports of discrimination and retaliation; engaged in and further sanctioned policies that retaliated against Plaintiff; allowed retaliatory actions by others to occur without remedying them; intentionally or with gross negligence supervised and failed to supervise subordinates who retaliated against Plaintiff; and/or failed to act on information that retaliation was occurring.

83. Defendant's conduct deprived Plaintiff of her right to equal protection guaranteed by the Fourteenth Amendment of the United States Constitution.

84. Defendant's conduct caused Plaintiff to suffer damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

## COUNT IV

### Conspiracy Under § 1983 – Retaliation:
### Defendant Rotondo in his Individual Capacity

85. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 84 as if contained herein.

86. Defendant Rotondo acted pursuant to explicit and/or implicit agreements and engaged in coordinated and overt acts for the purpose of retaliating against Plaintiff for opposing sex-based harassment, discrimination, and retaliation, including with other supervisors in Defendant DOE.

87. Defendant's conduct deprived Plaintiff of her right to equal protection guaranteed by the Fourteenth Amendment of the United States Constitution.

88. Defendant's conduct caused Plaintiff to suffer damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

## COUNT V

### Equal Protection – Bias Investigative and Complaint Procedures and Practices – Against Defendant DOE

89. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 88 as if contained herein.

90. Defendant deliberately administers a flawed sexual harassment complaint procedure, and is either unable or unwilling to address the sexual harassment complaints by its employees.

91. As a result, employees, including Plaintiff, have lost faith in Defendant DOE's ability to investigate internal complaints of sex-based discrimination and/or sexual harassment, or retaliation committed against them by supervisors, and consider futile making any internal sex-based discrimination and/or sexual harassment complaint against a supervisor.

92. Defendant DOE's failure to properly investigate sex-based employee complaints discriminates against Plaintiff in violation of her right to equal protection guaranteed by the Fourteenth Amendment of the United States Constitution.

**93.** Defendant's conduct caused Plaintiff to suffer damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

<u>**COUNT VI**</u>

**Due Process Under § 1983:**
<u>**Defendant Rotondo in his Individual Capacity**</u>

94. Plaintiff repeats and realleges the allegations stated above in paragraphs 1 through 92 as if contained herein.

95. Plaintiff possesses a property interest in her continued employment as a Principal with Defendant DOE that derives from Title VII of the Civil Rights Act of 164, the New York States Human Rights Law, the New York City Human Rights Law, the New York City Civil Service Law, Defendant DOE's sexual harassment and discrimination policies and procedures.

96. Plaintiff also possesses a property interest that derives from Plaintiff's collective bargaining agreement with Defendant DOE.

97. Plaintiff is not an employee at will.

98. Defendants deprived Plaintiff of her property interests in her employment in violation of Plaintiff's right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

99. Defendant's conduct caused Plaintiff to suffer damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

# COUNT VII

## Discrimination and Retaliation under the NYCHRL
## Against Defendants DOE and Rotondo

100.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 99 as if set forth herein.

101.     Plaintiff is an person within the meaning of the NYCHRL.

102.     Defendants are an employer and/or a supervisor or an agent of an employer within the meaning of the NYCHRL.

103.     By its actions detailed above, Defendants have discriminated, harassed, and retaliated against Plaintiff Williams on the basis of her sex and gender and for complaining about discrimination and retaliation in violation of the NYCHRL.

104.     As a result of the discrimination, harassment, and retaliation described above, Plaintiff has been injured, has suffered, and will continue to suffer personal injury, professional injury, including lost wages (including but not limited to her discontinuance as principal made effective five days before the four percent (4%) general salary increase as principal would be implemented) (*e.g.*, not permitted to complete final probationary year period to serve as principal; unable to be promoted within the professional structure of the Department, the Civil Service structure, and the collective bargaining agreement, including being considered for tenure), and emotional distress in amounts to be determined at trial.

105.     Defendants' discriminatory conduct was taken with reckless indifference to Plaintiff's legal rights entitling her to punitive damages under the NYCHRL.

## COUNT VIII

### Retaliation under the NYCHRL
### Against Defendants DOE and Rotondo

106.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through

104 as if set forth herein.

107.     Plaintiff is a person within the meaning of the NYCHRL.

108.     Defendants are an employer or supervisor, or employee and/or agent of an

employer within the meaning of the NYCHRL.

109.     Plaintiff opposed unlawful and discriminatory employment activity and

complained of discriminatory employment practices and engaged in protected

employment activity under the NYCHRL.

110.     Defendants unlawfully retaliated and/or aided an abetted retaliation against

Plaintiff for opposing sex-based discrimination, harassment, and retaliation.

111.     By their actions detailed above, Defendants have discriminated, harassed, and

retaliated against Plaintiff on the basis of her sex and gender and for complaining about

discrimination, harassment, and retaliation and for engaging in protected employment

activity in violation of the NYCHRL.

112.     As a result of the discrimination and retaliation described above, Plaintiff has

been injured, suffered, and will continue to suffer personal injury and professional injury,

including lost wages (including but not limited to her discontinuance as principal made

effective five days before the four percent (4%) general salary increase as principal

would be implemented) (*e.g.*, not permitted to complete final probationary year period to

serve as principal; unable to be promoted within the professional structure of the

Department, the Civil Service structure, and the collective bargaining agreement,

including being considered for tenure), and emotional distress in amounts to be determined at trial.

113.     As detailed above, Defendants have taken these retaliatory actions against Plaintiff in reckless disregard for her rights, entitling her to punitive damages under the NYCHRL.

## COUNT IX

### § 8-107(13) (b) under the NYCHRL
### Against Defendants DOE and Rotondo

114.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 113 as if set forth herein.

115.     Plaintiff is an person within the meaning of the NYCHRL.

116.     Defendant DOE in an employer and Defendant Rotondo is an employee supervisor and/or agent of the employer within the meaning of the NYCHRL.

117.     Defendant DOE is deemed to have known about Defendant Rotondo's discriminatory, harassing, and/or retaliatory actions. Defendant DOE failed to act to stop Defendant Rotondo from discriminating, harassing, and/or further retaliating against Plaintiff.

118.     Defendant Rotondo exercised managerial and supervisory responsibility over Plaintiff.

119.     Defendant Rotondo was a supervisory managerial employee of Defendant DOE.

120.     Defendant DOE knew of Defendant Rotondo's discriminatory conduct.

121.     Defendant DOE is liable for Defendant Rotondo's conduct.

122.     By their actions detailed above, Defendants as a result of the discrimination, harassment, and retaliation described above, Plaintiff has been injured, suffered and will

continue to suffer personal injury and professional injury, including lost wages (including but not limited to her discontinuance as principal made effective five days before the four percent (4%) general salary increase as principal would be implemented) (*e.g.*, not permitted to complete final probationary year period to serve as principal; unable to be promoted within the professional structure of the Department, the Civil Service structure, and the collective bargaining agreement, including being considered for tenure), and emotional distress in amounts to be determined at trial.

123.     As detailed above, Defendants have taken these retaliatory actions against Plaintiff in reckless disregard for her rights, entitling her to punitive damages under the NYCHRL.

## COUNT X

### Negligent Supervision
### Against Defendants DOE and Rotondo

124.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 123 as if set forth herein.

125.     Defendants owe a duty to safeguard Plaintiff from the intentional and/or negligent torts and unlawful conduct committed against Plaintiff by other Defendants. Defendants breached their duty to Plaintiff by intentionally or negligently supervising, failing to supervise, permitting, or contributing to, and/or failing to remedy the intentional and/or negligent acts/torts and unlawful conduct committed against Plaintiff by other Defendants.

126.     Defendants' negligence and/or negligent supervision caused Plaintiff damages, including personal injuries, professional injuries, and emotional distress in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter Judgment and an Order as follows:

127.     Declaring that Defendant Rotondo sexually harassed Plaintiff Williams and retaliated against her in the terms and conditions of her employment.

128.     Declaring that Defendant DOE retaliated against Plaintiff Williams in the terms and conditions of her employment.

129.     Declaring that Defendants aided and abetted each other in discriminating and retaliating against Plaintiff Williams in violation of the NYCHRL.

130.     Declaring that Defendants recklessly disregarded Plaintiff Williams' employment rights.

131.     Declaring that during the 2016-17 School Year, Defendant Rotondo did not provide the required number of written PPO reports in violation of N.Y. Educ. Law § 3012-C;

132.     Declaring that during the 2016-17 School Year, the MOLP (Measure of Leadership Practice) issued by Defendant Rotondo to Plaintiff Williams wherein he rated her as "Developing" based on only one PPO written report (10-20-16) because a minimum of two PPO written reports are required to be provided as per N.Y. Educ. Law § 3012-C is annulled, stricken and/or void;

133.     Declaring that Defendant DOE and Defendant Rotondo violated Title VII, the NYSHRL, the NYCHRL, § 1983, and the N.Y. Educ. Law by demoting Plaintiff Principal Williams to the position of Teacher rather than to the position of Educational Administrator;

134.     Declaring that Defendant DOE and Defendant Rotondo violated Title VII, the

NYSHRL, the NYCHRL, § 1983, and the N.Y. Educ. Law by Discontinuing Plaintiff

Williams in her position as Principal.

135.     Granting Plaintiff Williams the opportunity to complete the remainder of her

probationary year as Principal, which terminates August 31, 2019 (or an equivalent

period of time) so as to qualify for tenure as a Principal;

136.     Granting Plaintiff Williams tenure based on the school performance

improvements made and APPR Effective ratings obtained for the 2015-16, 2016-17, and

2017-18 school years in accordance with N.Y. Educ. Law § 3012-D;

137.     Reinstating Plaintiff Williams to the position of Principal in Excess as assigned by

Deputy Chancellor Cheryl Watson Harris in September 2018 or as Principal Assigned;

138.     Reinstating Plaintiff Williams rightful reversion rights to Educational

Administrator;

139.     Annulling the decision to Discontinue Plaintiff Williams;

140.     Annulling the decision to demote Plaintiff Williams to the position of Teacher;

141.     Reinstating Plaintiff Williams to the position as Principal with full retroactive

benefits, seniority, back pay, and front pay, and awarding any other personal and

professional damages and/or losses to make Plaintiff Williams completely whole.

142.     Ordering Defendants DOE and Rotondo to jointly and severally make Plaintiff

whole by providing compensation for past and future non-pecuniary losses resulting from

Defendants' unlawful conduct, including but not limited to, mental anguish, emotional

pain and suffering, stress, inconvenience, and loss of enjoyment of life, in amounts to be

determined at trial.

143.     Ordering Defendants to jointly and severally make Plaintiff whole by providing

compensation for past and future pecuniary losses resulting from Defendants' unlawful

conduct, including but not limited to back pay, front pay, lost benefits, loss of

professional reputation and standing, future lost earnings, and any other consequential

losses, in amounts to be determined at trial.

144.     Awarding punitive damages to the extent that each Defendant's liability is based

on malicious, reckless, or reprehensible action and/or inaction, in amounts to be

determined at trial and designed to punish Defendants' past unlawful conduct and to deter

future unlawful conduct.

145.     Enjoining Defendants from any further discriminatory or retaliatory actions

against Plaintiff as has been described herein.

146.     Awarding all reasonable attorneys fees and costs to Plaintiff.

147.     Awarding such other further relief as the Court may deem is just and proper.

Dated: April 15, 2019
        New York, New York

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS

_____/s/_____
Laura Dawn Barbieri
Attorneys for Plaintiff
Patricia Williams

225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400, ext. 712
(212) 285-1410 - fax
(914) 819-3387 - cell
lbarbieri@advocatesny.com

TO:    Shawna C. MacLeod, Esq.
        Assistant Corporation Counsel
        Zachary Carter, Esq.
        New York City, Corporation Counsel
        100 Church Street
        New York, New York 10007
On behalf of Defendants New York City Department of Education and Paul Rotondo

# EXHIBIT P-1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 520-2018-02220 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Patricia Williams | 212-470-1580 | 1968 |

Street Address     City, State and ZIP Code
611 West 148 street, apt 67, New York, NY 10031

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| NEW YORK CITY DEPARTMENT OF EDUCATION | | |

Street Address     City, State and ZIP Code
65 Court Street, BROOKLYN, NY 11201

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address     City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 02-01-2016   Latest 02-14-2018
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 49 year old Black female who works for the NYC Department of Education since 2003, most recently as the Principal of Crotona Academy High School. I believe I have been sexually harassed, and then retaliated against for rejecting sexual advances, in violation of Title VII of the Civil Rights Act of 1964, as amended. Specifically, my supervisor, Superintendent Paul Rotondo, in February of 2016, forcefully embraced me, pulling me against his erect penis, and against my will. I rebuffed this embrace and pushed him away. I then attempted to limit the occasions when I would have to be alone with him or be in physical contact with him. I have since been retaliated against by him, by being inaccurately and unfairly evaluated (June 2017) , having my job threatened, and by him soliciting negative reporting on me. Additionally, I was directed by him to conduct incorrect operational school functions, isolated to my school alone, resulting in the school performing poorly, which led to the school being identified for closure. He also called for two unwarranted investigations leading to disciplinary action, even though I was following his directives. I believe these actions have all been taken against me, both the initial sexual harassment and the subsequent retaliation when I rebuffed his advances, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Patricia Williams on 02-16-2018 04:50 PM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# EXHIBIT P-2

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 520-2018-05921 |

and EEOC

State or local Agency, if any — *none*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Patricia Williams | 212 470 1580 | 5-1-1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 611 West 148th Street Apt 67 New York  NY 10031 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NYC Department of Education (also known as the NYC Board of Education) | 15+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| **65 Court Street Brooklyn, New York 11201** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Superintendent Paul Rotondo in his individual and his official capacity, and John Doe 1, John Doe 2, etc. | 15+ | 646-654-1261 |

| Street Address | City, State and ZIP Code |
|---|---|
| 198 Forsyth Street New York, NY 10002 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: May 11, 2018    Latest: continuing

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Following the service of my EEOC complaint on the DOE, the DOE and Superintendent Rotondo, and others known and unknown within the DOE, aiding and abetting each other, have deprived me of my rightful employment and position as a principal, as well as knowingly falsified documents, negatively evaluated, and wrongfully interfered with my opportunities for tenure during my probationary period. Further, I continue to be improperly and wrongfully supervised by the same person, namely Superintendent Rotondo, who I complained and submitted evidence of sexual harassment, hostile work environment, and retaliation against, which the DOE knowingly has permitted and allowed such circumstances to exist and continue, including his opportunities for retaliation, and has done nothing to prevent such occurrences.

EEOC NEW YORK DISTRICT OFFICE
2018 SEP 14  PM 12:5_
RECEIVED

ARTHUR ZACHARY SCHWARTZ
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. NO. 02SC4889236
COMM. EXP. 12/31/19

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| *[signature]* | *[signature]* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  9/11/18 |
| | (month, day, year) |

# EXHIBIT P-3

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Patricia Williams
611 West 148 street
Apt 67
New York, NY 10031

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-02220 | Jiancheng Wang, Investigator | (212) 336-3753 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
**District Director**

12/13/2018
*(Date Mailed)*

Enclosures(s)

cc:
Robin Singer
**Associate Counsel**
**NYC DEPARTMENT OF EDUCATION**
52 Chambers Street
Room 308
New York, NY 10007

Laura D. Barbieri, Esq.
**ADVOCATES FOR JUSTICE**
225 Broadway, Suite1902
New York, NY 10007

# EXHIBIT P-4

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Patricia Williams
611 West 148 street
apt 67
New York, NY 10031

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-05921 | Jiancheng Wang, Investigator | (212) 336-3753 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

12/13/2018
*(Date Mailed)*

Enclosures(s)

cc:  Toni Gantz, Esq.
Deputy Counsel
NYC DEPARTMENT OF EDUCATION
52 Chambers Street, Room 308
New York, NY 10007

Laura D. Barbieri, Esq.
ADVOCATES FOR JUSTICE
225 Broadway, Suite 1902
New York, NY 10007