```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/29/2021____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA WILLIAMS,

                            Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, and PAUL ROTONDO,

                            Defendants.

1:19-cv-01353 (MKV)

**OPINION AND ORDER
GRANTING MOTION FOR
SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiff Patricia Williams initiated this action accusing Defendants the New York City

Department of Education ("DOE") and Paul Rotondo, the DOE Superintendent of Transfer

Schools, of discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et

seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.*

("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et

seq.* ("NYCHRL"), as well as 28 U.S.C. § 1983 ("Section 1983").  Before the Court is

Defendants' motion for summary judgment, seeking dismissal of all of Plaintiff's claims.  For

the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

### A.    *Facts Giving Rise to the Dispute*

        The facts as stated here are drawn from the Parties' statements made pursuant to Local

Rule 56.1 and are not disputed unless otherwise noted.  *See* Defendant's Local Rule 56.1

Statement of Undisputed Material Facts, ECF No. 53 ("Def. 56.1"); Plaintiff's Response and

Counterstatement of Undisputed Material Facts, ECF No. 64 ("Pl. 56.1").

        Plaintiff Patricia Williams was employed by the DOE beginning in 2003 and rose from

the role of a Teacher to an "Educational Administrator" by 2015.  Pl. 56.1 ¶ 11.  On August 31,

2015, Plaintiff was selected to be Interim Acting Principal of Crotona Academy High School ("Crotona Academy") by then-Superintendent of Transfer Schools Lashawn Robinson. Pl. 56.1 ¶ 13. Plaintiff ultimately was named Principal of Crotona Academy on June 2, 2016. Pl. 56.1 ¶ 25. Plaintiff's appointment to the Principal position was subject to her satisfactory completion of a probationary period ending August 31, 2019. Def. 56.1 ¶ 1; Pl. 56.1 ¶ 13. In between her selection as Interim Acting Principal and her appointment as Principal, Paul Rotondo was elevated to the role of Superintendent of Transfer Schools and became Plaintiff's direct supervisor. Pl. 56.1 ¶ 14.

Plaintiff's primary allegation in this case concerns Mr. Rotondo's actions while Plaintiff was still Interim Acting Principal. Specifically, Plaintiff alleges that on February 12, 2016, Mr. Rotondo forcibly grabbed her and pulled her into his body, specifically holding Plaintiff around her waist and forcing their lower bodies to touch. Pl. 56.1 ¶ 10. Plaintiff claims that she struggled to get free of Mr. Rotondo's "hug" (which she characterizes as a sexual advance) and afterward felt victimized by the encounter. Pl. 56.1 ¶¶ 21-22.

As a Principal, Plaintiff received mixed reviews at best. As Plaintiff admits, she was evaluated by both Mr. Rotondo and the Deputy Superintendent for Transfer Schools, John Sullivan. Pl. 56.1 ¶ 32. Plaintiff's reviews from her superiors were consistently "low," "ineffective," or "developing."[1] Pl. 56.1 ¶¶ 34, 38. Plaintiff did however, receive an "effective" rating on state-level evaluations, which only considered student test performance and "state approved learning measures." Pl. 56.1 ¶ 32, 39. Crotona Academy as a whole also was

---

[1] Plaintiff states in her Local Rule 56.1 Statement that the review process did not comply with regulations and the relevant union contracts. *See* Pl. 56.1 ¶¶ 35-36. These details do not impact Plaintiff's discrimination claims, but instead would be relevant to an appeal of Plaintiff's discontinuance and termination, which the record indicates was available to Plaintiff. *See* Declaration of Brittany J. Finder in Support, ECF No. 57, Ex. H ("[Y]ou have the right to appeal this decision [terminating Plaintiff's probationary position as Principal] to the Office of Appeals and Reviews within fifteen (15) school days of this letter."). The record does not indicate whether that appeal was taken or whether Plaintiff challenged her termination outside this lawsuit.

reviewed during Plaintiff's time as Principal.  At the end of the 2016-2017 school year, the school was rated "Proficient" in seven areas and "Developing" in three areas.  Pl. 56.1 ¶ 53. However, three months later, the ratings were changed, with four areas being rated "Proficient" and six rated "Developing."  Pl. 56.1 ¶ 54.  Plaintiff claims that during a meeting with Rotondo in July 2017, Rotondo admitted to changing the ratings.  Pl. 56.1 ¶ 55.

Plaintiff was also the subject of a DOE misconduct investigation in 2017.  Specifically, on February 13, 2017, the DOE Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigations for the New York City School District explaining that Plaintiff had "improperly programmed students at Crotona Academy High School to sit for longer class periods" and "programmed teachers to work an additional 80 minutes a week" in violation of both DOE regulations, state education law, and the DOE Collective Bargaining Agreement with the teachers' union.  Def. ¶ 2; Declaration of Brittany J. Finder in Support of Motion for Summary Judgment, ECF No. 57 ("Finder Decl."), Ex. B.[2]  Approximately one year after her appointment as Principal, the OSI investigation into these allegations was completed. *See* Pl. 56.1 ¶ 4.  The investigation substantiated the allegations against Plaintiff and recommended that the report be forwarded to the Superintendent, Paul Rotondo, for "strong disciplinary action, including possible termination and assignment of a problem code" against Plaintiff.  Def. 56.1 ¶ 5.  The Parties point to no admissible evidence regarding whether any disciplinary action was taken at the time.

---

[2] Plaintiff objects to this exhibit and the facts Defendants allege it supports on the ground that it is "an unauthorized personnel record and as objectionable hearsay."  Pl. 56.1 ¶ 2.  Defendants respond that the exhibit is admissible as a business record under Federal Rule of Evidence 803(6).  The exhibit, which purports to be an investigative report of a DOE office likely is admissible as a business record and the Court considers it here.  Moreover, Plaintiff herself cites the report as the basis for several of her counterstatements of fact in her Local Rule 56.1 statement.  *See* Pl. 56.1 ¶¶ 4.1-4.6.  As a result, it is not clear whether Plaintiff actually intends to object to this exhibit.

During the same school year, the DOE apparently began to consider closing Crotona

Academy or changing its leadership.  In an email to Mr. Rotondo on June 17, 2018, Plaintiff

spoke of "potential plans for Crotona Academy to close or for change in the school leadership."

Def. 56.1 ¶ 3; Finder Decl. Ex. C.  Plaintiff apparently opposed such measures, writing that the

school "ha[d] undergone many changes within the last two years from obtaining a new principal

in 2015 to relocating to a new school location in 2016" and advocating for stability in leadership

and intervention to help students.  Finder Decl. Ex. C.  However, DOE formalized a proposal to

close Crotona Academy in early 2018 and notified parents of students at the school in February

of that year.  Def. 56.1 ¶ 7, Finder Decl. Ex. E.  Among the stated reasons for the closure were

that Crotona Academy "struggle[d] with academic performance and attendance issues,"

including a graduation rate in the 27th percentile of high schools city-wide and chronic

absenteeism above 90 percent.  *See* Finder Decl. Ex. E at 2.  Plaintiff also states that the school

was to be closed due to declining enrollment, and that it had not been permitted to actively

conduct Open House recruitment before the 2017-2018 school year.  Pl. 56.1 ¶¶ 7.5, 7.8.

Plaintiff received a "Notice of Discontinuance" on May 11, 2018, stating that Mr.

Rotondo would evaluate Plaintiff's status "as a probationer . . . based on [her] performance in

[the] position" on June 26, 2018.  Def. 56.1 ¶ 9; Pl. 56.1 ¶ 78.[3]  Several months later, Plaintiff

received a similar Notice, dated September 20, 2018, explaining that Mr. Rotondo again would

review Plaintiff's status as a probationary Principal.  Def. 56.1 ¶ 9; Finder Decl. Ex. G.  Finally,

---

[3] Plaintiff's reference to the May 11, 2018 notice includes that the notice stated that "her discontinuance would be effective on June 31, 2018," citing Plaintiff's deposition testimony.  *See* Pl. 56.1 ¶ 78.  The Court has reviewed both the Notice of Discontinuance, attached to the Finder Declaration, and the cited portions of Plaintiff's Deposition Testimony.  *See* Finder Decl. Ex. F (May 11, 2018 Notice); Declaration of Laura D. Barbieri in Opposition, ECF No. 63, Ex 2 ("Williams Dep.") at 170:1-10.  There is no "June 31" and, unsurprisingly, the date does not appear in any of the documents.   In a different portion of Plaintiff's deposition, Plaintiff states that she was "informed" by the Deputy Superintendent, John Sullivan, that her last day in her role as Principal of Crotona Academy would be approximately June 26, 2018.  *See* Williams Dep. 37:22-38:1.  Plaintiff does not reference any document reflecting that statement.

Plaintiff received a letter confirming her discontinuance as Principal of Crotona Academy on

October 1, 2018.  Def. 56.1 ¶ 10, Finder Decl. Ex. H.  Specifically, Plaintiff was informed that

"in consultation with Department of Education senior officials, I [Paul Rotondo] reaffirm your

Discontinuance of Probationary Service effective close of business Monday October 1, 2018."

Finder Decl. Ex. H.

## B.    *Procedural History*

During her tenure as Principal, Plaintiff filed two charges with the U.S Equal

Employment Opportunity Commission ("EEOC") against the DOE and Mr. Rotondo, first on

February 16, 2018 and again on September 14, 2018.  Def. 56.1 ¶ 8; Pl. 56.1 ¶¶ 76, 83.  In her

charges, Plaintiff claimed that the DOE and Mr. Rotondo discriminated against her based on her

sex, first to negatively affect the performance of Crotona Academy (leading to its closure) and

then to terminate her as a Principal in the DOE system.  Pl. 56.1 ¶¶ 76, 83 (citing the charges);

Declaration of Laura D. Barbieri in Opposition, ECF No. 63 ("Barbieri Decl."), Ex. 1 at 34-36.

Plaintiff received Right to Sue Notices for both EEOC charges on December 13, 2018.  *See*

Amended Complaint, ECF No. 18 ¶ 21.

Plaintiff filed this action on February 12, 2019, *see* Complaint, ECF No. 1, and filed an

Amended Complaint two months later.  *See* Amended Complaint, ECF No. 18.  Defendants then

moved to dismiss the Amended Complaint.  *See* Motion to Dismiss, ECF No. 21.

In an Opinion dated August 28, 2019, Chief Judge Colleen McMahon partially granted

and partially denied Defendants' motion to dismiss.  *See Williams v. New York City Department*

*of Education*, No. 19-cv-01353, 2019 WL 4393546 (S.D.N.Y. Aug. 28, 2019).  In that opinion,

Chief Judge McMahon determined that Plaintiff adequately had pleaded, for the purposes of that

motion, claims under Title VII, the NYSHRL, the NYCHRL, and, in one limited circumstance

28 U.S.C. § 1983 ("Section 1983").  *Id.* at *5-21.  However, the Court dismissed Counts Four,

Five, Six and Ten in Plaintiff's Amended Complaint, constituting most of Plaintiff's Section

1983 claims and her common law negligent supervision claim. *Id.* at \*16-17, \*21.

  While discovery was ongoing, the case was transferred to me.  Discovery is now closed,

and Defendants move for summary judgment on all remaining claims.[4]

  In support of their motion [ECF No. 56], Defendants filed a Memorandum of Law [ECF

No. 58] ("Def. Br."), their Local Rule 56.1 Statement [ECF No. 53], and a Declaration of

counsel Brittany Finder attaching eighteen exhibits [ECF No. 57] ("Finder Decl.").  Plaintiff

opposed the motion, belatedly filing her Local Rule 56.1 Statement [ECF No. 64], as well as a

Memorandum in Opposition [ECF No. 61] ("Opp."), a Declaration from Plaintiff [ECF No. 62]

("Williams Decl."), and a Declaration of counsel Laura Barbieri attaching fourteen exhibits [ECF

No. 63] ("Barbieri Decl.").[5]  Defendants also submitted a Reply Memorandum of Law in Further

Support [ECF No. 67] ("Def. Reply").

## LEGAL STANDARD

  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be

granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court can conclude

that there is no genuine dispute as to any material fact in three circumstances. *See Johnson v.*

*Nat'l Football League Players Ass'n*, No. 17-cv-5131 (RJS), 2019 WL 3531957, at \*2 (S.D.N.Y.

---

[4] At the conclusion of discovery, as required by the Court's Individual Practices, Defendants filed a pre-motion letter in anticipation of their motion for summary judgment and their Local Rule 56.1 Statement of Facts.  *See* ECF Nos. 53-54.  Plaintiff, despite being required to do so, did not file a response letter or her Local Rule 56.1 Counterstatement.  Following Plaintiff's failure to file her documents, the Court granted Defendants leave to file their motion.  *See* Order, ECF No. 60.

[5] Plaintiff originally filed a Memorandum in Opposition on August 3, 2020 [ECF No. 61], but filed an "amended" memorandum the next day [ECF No. 65].  The only difference between the documents appears to be the addition of a table of contents and table of authorities to bring the filings into compliance with this Court's Individual Practices.  Because there does not appear to be any substantive differences in the filings, the Court considers the "amended" memorandum of law as Plaintiff's primary opposition.

Aug. 2, 2019).  First, the parties agree on all facts (that is, there are no disputed facts).  Second, the parties disagree on some or all facts, but no reasonable fact-finder could accept the non-moving party's version of the facts (that is, there are no genuinely disputed facts).  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Third, the parties disagree on some or all facts, but even on the non-moving party's version of the facts, the moving party is nonetheless entitled to judgment as a matter of law (that is, none of the factual disputes are material). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court may not weigh evidence or make credibility assessments.  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  It must draw all reasonable inferences in favor of the party opposing summary judgment.  *Id.*  However, the non-moving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A plaintiff opposing summary judgment "cannot rest on the allegations in the pleadings and must point to specific evidence in the record to carry its burden."  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).   At the summary judgment stage, all factual allegations must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  "Conclusory allegations, conjecture, and speculation" do not support reasonable inferences, *Kerzer v. Kingly*

*Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), and a mere "scintilla of evidence in support of the [non-moving party's] position" is not enough to create a genuine dispute. *Anderson*, 477 U.S. at 252.

## DISCUSSION

Following the decision partially granting Defendants' motion to dismiss Plaintiff's Amended Complaint, the following claims remained in this case: 1) Count One, sexual harassment (based on a hostile work environment), gender discrimination, and retaliation under both Title VII and the NYSHRL, 2) Count Two, retaliation in violation Section 1983 and the Equal Protection Clause of the Constitution, 3) Count Three. supervisory liability for retaliation under Section 1983, 4) Count Seven, discrimination and sexual harassment (based on a hostile work environment) under the NYCHRL, 5) Count Eight, retaliation under the NYCHRL, and 6) Count Nine, supervisory liability against the DOE and Rotondo under NYCHRL § 8-107(13)(b). *See generally Williams*, 2019 4393546, at *6-21.

By their motion, Defendants seek judgment and dismissal of Plaintiff's Amended Complaint in its entirety. *See* Motion for Summary Judgment, ECF No. 56, at 1. Defendants' grounds for dismissal largely are both that Plaintiff has failed to provide admissible evidence establishing a case of discrimination and, even if she has, that she has failed to rebut Defendants' stated non-discriminatory reasons for her termination. *See* Def. Br. at 7-17. In making that argument, Defendants indicate that Plaintiff's claims fail even where her version of the facts is accepted, because she does not present admissible evidence of discrimination. *See* Def. Br. at 5-7. Defendants also raise an issue related to timeliness. *See* Def. Reply at 3-7. The Court begins with the timeliness argument before considering each of Plaintiff's claims.

### A.    *Plaintiff's Sexual Harassment Claim is Time-Barred in Part*

Defendants move to dismiss the bulk of Plaintiff's claims on the basis that they are time-barred. *See* Def. Reply at 3-7. While Defendants first mention this argument in their Reply

Memorandum, *see* Def. Reply at 3-6, Plaintiff addresses the argument in her Opposition, at least as it relates to her hostile work environment claims. *See* Opp. at 10-11, 19. The issue also was briefed in connection with Defendant's motion to dismiss. *See Williams*, 2019 WL 4393546. Ordinarily, the Court will not consider arguments raised only in a reply brief. *See In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) ("The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007))). However, a district court has broad discretion to consider such arguments. *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013) (citing cases). A court generally will consider arguments raised for the first time in reply if they are responses to the other party's opposition. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000). Here, because Defendant's timeliness arguments can be understood as responsive to Plaintiff's Opposition, the Court considers them here.

In connection with Defendants' motion to dismiss, Chief Judge McMahon determined that certain of Plaintiff's claims at least in part were untimely. Specifically, she found that Plaintiff's sex discrimination claim based on discrete acts (*e.g.* her termination) was untimely only to extent it was based on adverse employment actions that took place before April 22, 2017. *Williams*, 2019 WL 4393546, at *9. Chief Judge McMahon determined that Plaintiff's Section 1983 claims were not time-barred. *Id.* at *14-15. Finally, Chief Judge McMahon determined that, based on the allegations in Plaintiff's Amended Complaint, Plaintiff's sexual harassment claim based on a hostile work environment was timely because Plaintiff had plausibly alleged "continuing violations" sufficient to withstand a motion to dismiss. *Id.* at *7. With the benefit of discovery, Defendants focus on the last point in their motion for summary judgment.

9

Individuals alleging discrimination under Title VII must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. 2000e-5(e)(1).  In this case, Chief Judge McMahon previously ruled that "if Williams' sexual harassment claim relied exclusively on Rotondo's unwanted sexual advance, the claim indeed would be untimely, as it occurred more than 300 days before Williams filed her first EEOC charge on February 16, 2018."  *Williams*, 2019 WL 4393546, at *7.  However, the Court found that Plaintiff's claims were timely for the purposes of the motion to dismiss because Plaintiff had alleged an "ongoing practice of harassment."  *Id.*  Now that discovery has been completed, Defendants renew their argument that Plaintiff's claims are untimely because Plaintiff alleges no facts constituting a continuing violation.  Def. Reply at 3-7.

The "continuing violations doctrine" provides that "the entire scope of a hostile environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory period."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).  However, to be able to consider out-of-time actions along with timely ones, the plaintiff must illustrate that the actions taken against her constituting the allegedly hostile environment are related and part of a single pattern or practice, and not "discrete" actions.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998).  Certain adverse actions, "such as termination through discharge or resignation, a job transfer, or discontinuation of a particular job assignment, are not acts of a 'continuing' nature," and are instead "discrete" actions as a matter of law.  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).  Negative performance evaluations and individual sexual overtures also are discrete acts not amenable to the continuing violation analysis.  *See Valtchev v. City of New York,* No. 06-cv-07157 (NRB), 2009 WL 2850689, at *6 (S.D.N.Y. Aug. 31, 2009) ("[T]he adverse employment actions alleged

here—failures to promote, negative performance evaluations and refusals to provide opportunities to supplement income through summer school appointments, etc.—are precisely the type of events that the Supreme Court has called 'discrete acts.'" (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-14 (2002))), *aff'd* 400 F. App'x 586; *see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."), *overruled on unrelated grounds Greathouse v. JHS Security, Inc.*, 784 F.3d 105 (2d Cir. 2015).

Here, Defendants argue that after discovery, Plaintiff has not alleged any pattern or practice of discrimination sufficient to sustain otherwise untimely claims. Def. Reply at 5-6. Indeed, Plaintiff admits in her Opposition that she bases the "pattern" of discrimination on negative evaluations, a demotion in title, and rebuffing Rotondo's alleged sexual advances. *See* Opp. at 19. Each of these is a "discrete act" that cannot support a claim of a "continuing violation." *Valtchev v. City of New York,* 2009 WL 2850689, at *6. Plaintiff does not attempt to describe any other pattern or practice of discrimination. As a result, the Court now concludes that Plaintiff's hostile work environment claim is untimely insofar as it relates to any action taken before April 22, 2017. However, further parsing of Plaintiff's allegations is unnecessary since the Court finds below that Plaintiff's claim nonetheless should be dismissed in its entirety. *See infra* Section B.2.

**B.    *Plaintiff's Title VII Claims Are Dismissed***

Central to Plaintiff's Amended Complaint are her claims under Title VII for sex discrimination (based on discrete adverse employment actions), sexual harassment (based on a hostile work environment), and retaliation. Plaintiff also makes nearly identical claims under the NYSHRL and NYCHRL. After discovery and based on the evidence in the record, the Court

11

concludes that Plaintiff has failed to raise a genuine dispute of material fact as to any of these claims and, thus, the claims must be dismissed.

>    1)    *The Title VII Sex Discrimination Claim*

At the summary judgment stage, Title VII discrimination claims are analyzed under the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework,

> a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.

*Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (citing *Farias v. Int'l Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001)). As to the last element of that test, the plaintiff must "show circumstances that would be sufficient to permit a rational finder of fact to infer that" DOE's views or employment decisions were "more likely than not based in whole or in part on discrimination." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997))). A plaintiff most often establishes an inference of discrimination by "showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group.'" *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

If the plaintiff meets the burden to establish a *prima facie* case of discrimination, the "burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Mario*, 313 F.3d at 767 (citing *Farias*, 259 F.3d at 98). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. V.*

*Hicks*, 509 U.S. 502, 509 (1993)).  As long as the "explanation provided . . . [is] legally sufficient to justify a judgment for the defendant" and the defendant "clearly set[s] forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," the presumption raised by the *prima facie* case is rebutted.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S 248, 255 (1981).

Finally, "[i]f the defendant proffers such a legitimate reason for the challenged actions, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario*, 313 F.3d at 767 (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  In particular, the plaintiff must "produce evidence and carry the burden of persuasion that the proferred reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  "To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

In this case, Plaintiff has presented sufficient evidence, albeit barely, to establish a *prima facie* case of discrimination.  In particular, she alleges that she was terminated from her position as Principal after rebuffing Rotondo's single sexual advance years earlier, and after, as Plaintiff alleges, Rotondo previously reviewed Plaintiff poorly for the same reason.  *See* Pl. 56.1 ¶¶ 40-50, 53-56, 77.  However, Defendants have come forward with evidence supporting their assertions of non-discriminatory reasons for Plaintiff's termination, including poor performance reviews (from both Rotondo and another reviewer) and Plaintiff's misconduct related to class time and teacher hours.  Def. 56.1 ¶¶ 3, 4; Def. Br. at 6; Def. Reply at 3.  As such, Defendants have rebutted Plaintiff's thin *prima facie* case

Plaintiff does not, even with the benefit of discovery, offer evidence that Defendants' proffered non-discriminatory reasons for their actions are pretextual.  *Cortes*, 802 F.3d at 231 ("[T]he plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext.").  Even assuming all of the facts as stated by Plaintiff, and supported by evidence, Plaintiff does not successfully rebut Defendants' legitimate reasons for her termination or otherwise raise a question of fact permitting this claim to proceed to trial.  First, Plaintiff does not point to a single similarly situated employee to whom her own performance is comparable.  Instead, Plaintiff's opposition to Defendants' motion merely cites her own conclusory assertions that any negative reviews were motivated by discrimination for approximately three years between Rotondo's sexual advance and her termination.  *See, e.g.*, Pl. 56.1 ¶¶ 27, 31, 40.  In particular, the Court is guided by Plaintiff's own testimony at her deposition where she stated that she did not "believe that [she was] discontinued as a probationary principal, from the DOE, on the basis of her gender."  *See* Def. Br. at 5 (quoting Williams Dep. at 227:7-10).  Plaintiff urges the Court to disregard this testimony and attempts to explain that Plaintiff misunderstood the question at the deposition.  *See* Opp. at 8.

Plaintiff cannot create an issue of fact simply by citing her own deposition and affidavit testimony without more.  *Kunik v. New York City Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020) (collecting cases and noting that "[i]n the face of contemporaneous evidence . . . [Plaintiff's] self-serving comments from her deposition after the filing of this lawsuit cannot create an issue of fact . . . .").  Even if she could create an issue of fact only through her own testimony, the Court cannot disregard Plaintiff's prior deposition testimony—which was harmful to Plaintiff's case—in favor of her new self-serving affidavit statements created in an attempt to defeat summary judgment.  *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("The 'sham issue of fact' doctrine 'prohibits a party from defeating summary judgment

14

simply by submitting an affidavit that contradicts the party's previous sworn testimony.'" (quoting *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam))). Because she cites no evidence other than her self-serving affidavit and out-of-context deposition testimony to prove discrimination, Plaintiff has not raised a triable question of fact regarding the cause of her termination.  In short, Plaintiff has not rebutted to no evidence to rebut the Defendants' proffered non-discriminatory reasons for their actions, much less established that those reasons are pretextual.  As a result, Defendants' motion for summary judgment is granted on this claim.

### 2)    *The Title VII Hostile Work Environment Claim*

"To defeat a motion for summary judgment on a claim of hostile work environment, 'a plaintiff must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  *Piccone v. Town of Webster*, 511 F. App'x 63, 64 (2d Cir. 2013) (summary order) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)); *see also Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003) ("[A] plaintiff must show that 'the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002))). "Whether the challenged conduct is sufficiently severe or pervasive 'depends on the totality of the circumstances.'"  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quoting *Cruz*, 202 F.3d at 570).

"[T]he misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."  *Alfano*, 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The Supreme Court has delineated the factors a court should consider in

assessing whether the environment is objectively hostile or abusive.  Relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374.

Plaintiff argues that she experienced a hostile work environment through unfavorable performance reviews, missing performance reviews, multiple refusals to address Plaintiff's requests for feedback on areas to improve professionally, interference with school "Quality Review" ratings, interference with school enrollment and factors that would have influenced the DOE's decision to close Crotona Academy, multiple retaliatory internal investigations, discontinuance of Ms. Williams as Probationary Principal, and eventually closure of the school. *See* Opp. at 12-13.  However, the sole evidentiary support proffered by Plaintiff with regard to any of these issues is her own deposition testimony and summary judgment affidavit.  Aside from this self-serving testimony, Plaintiff does not provide any evidence that any of the actions about which she complains were based on discrimination.  On that basis alone, Plaintiff fails to raise a genuine issue of fact regarding a hostile work environment.  *See Kunik*, 436 F. Supp. 3d at 695.

Moreover, Plaintiff has not sufficiently alleged that any of this conduct, other than Rotondo's initial advance, was in any way related to or on account of her gender.  The other actions listed as part of Plaintiff's hostile work environment claim are not 'facially sex-related,' nor can it be inferred that these incidents, although neutral on their face, were in fact discriminatory." *Mercedes v. New York City Dep't of Educ.*, 2018 WL 1682015, at *13 (S.D.N.Y. 2018).  This is especially true because at least some of the allegedly discriminatory

conduct, such as Plaintiff's negative performance reviews, was taken not by Rotondo, but by another person whom Plaintiff herself suggests was not motivated by discrimination or aware of Rotondo's previous sexual advance.  *See* Pl. 56.1 ¶ 39 (stating that John Sullivan, deputy superintendent who reviewed Plaintiff negatively was unaware of Plaintiff rebuffing Rotondo's advance).  In short, the only adverse action tied to Plaintiff's gender is the sexual advance in 2016.  *See* Opp. at 7-8 (quoting *Williams*, 2019 WL 4393546, at *15).  Absent any other conduct between the advance in 2016 and Plaintiff's termination in 2018, this conduct cannot rise to the level of pervasiveness necessary to create Title VII liability for a hostile work environment. *Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 264-65 (E.D.N.Y. 2019) ("[P]laintiffs cannot establish a hostile work environment claim based on a single sexual advance by a coworker." (citing *Cohen v. Litt*, 906 F. Supp. 957, 965 (S.D.N.Y. 1995))).  Accordingly, Plaintiff has failed to raise a genuine triable issue of fact regarding her hostile work environment claim, and the claim is dismissed.

### 3)     *The Title VII Retaliation Claim*

Like Plaintiff's Title VII discrimination claim, her retaliation claim under Title VII also is analyzed under the *McDonnell Douglas* framework.  Specifically, Plaintiff must establish a *prima facie* case of retaliation by showing (1) participation in a protected activity; (2) the defendant's awareness of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  If Plaintiff succeeds, then the burden shifts to the Defendants to come forward with non-discriminatory motivations for the adverse employment action.

Here, Plaintiff alleges that Rotondo retaliated against her for rebuffing his sexual advance and for filing charges with the EEOC.  *See* Opp. at 19-21.  Defendants do not challenge that

Plaintiff has established the first three elements of her *prima facie* case.  *See* Def. Br. at 15.

However, Defendants argue that Plaintiff has not—and cannot—raise a genuine question of fact

that there was a causal connection between her termination and Plaintiff's protected actions.

Def. Br. at 15-17.

A plaintiff can establish a causal connection either *indirectly*, by showing that the

protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct; or *directly*, through evidence of retaliatory animus directed against the plaintiff by the

defendant.  *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019), *cert. denied*, 140 S.

Ct. 2668, 206 L. Ed. 2d 822 (2020).  "While temporal proximity can support an inference of

retaliation for purposes of establishing a *prima facie* case, the proximity must be very close."

*Dhar v. City of New York*, 655 F. App'x 864, 865- 66 (2d Cir. 2016) (summary order).

In this case, Plaintiff has not provided any direct evidence that her termination was in

retaliation for her rebuffing Rotondo or for her EEOC charges.  Instead, in order to allege a

causal connection, Plaintiff relies on the time between her EEOC charges and her termination to

imply causation.  *See* Opp. at 21.  Defendants argue that the gap in time between any rebuffed

sexual advance, Plaintiff's EEOC charges, and her termination are too long to permit an

inference of causation.  *See* Def. Br. at 16-17.  As an initial matter, Plaintiff is incorrect that

Defendants' arguments about the gap in time are precluded by the Court's prior decisions.  While

Chief Judge McMahon's opinion denying Defendants' motion to dismiss rejected the

Defendants' timing argument in relation to Plaintiff's pleading, *see Williams*, 2019 WL 4393546

at *14, at the summary judgment stage, Plaintiff is no longer entitled to have her bare allegations

accepted as true.  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  Rather, Plaintiff "must

point to specific evidence in the record to carry [her] burden."  *Salahuddin*, 467 F.3d at 273;

*McKenna*, 386 F.3d at 436 ("[W]ith a motion for summary judgment adequately supported by affidavits, the party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial." (citing Fed. R. Civ. P. 56(c)).

Plaintiff cannot establish causation simply based on a claimed temporal connection between the rebuffed sexual advance and her termination two years later. Courts have found far shorter periods to be insufficient as a matter of law to support such an inference of causation based on temporal proximity alone. *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (collecting cases and noting "[t]he time lapses between [plaintiff's] protected activities and the alleged retaliatory acts—ranging from two months to several years— were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations."). Indeed, even if one only measures from the date of Plaintiff's first EEOC charge to the date of her termination, more than seven months passed between the charge and Plaintiff's termination. Plaintiff cannot show causal connection by temporal proximity.

Even if the length of time alone did not foreclose Plaintiff's claims, intervening events also defeat any *prima facie* case of retaliation on the record before the Court. In particular, between the sexual advance and Plaintiff's termination, Ms. Williams was promoted to Principal. *See* Pl 56.1 ¶¶ 19, 25. This intervening positive employment action breaks any alleged causal link. *Byrne v. Telesector Resources Grp., Inc.*, 2007 WL 962929, at *17 (W.D.N.Y. Mar. 29, 2007) (An "intervening promotion . . . precludes the finding of a causal connection.").

Finally, even if Plaintiff did establish a *prima facie* case of retaliation, Defendants have provided, and Plaintiff has not rebutted, non-discriminatory reasons for her termination which defeat any inference of retaliation. In particular, Defendants point to Plaintiff's documented

misconduct and the resulting OSI investigation as cause for her firing. *See* Def. Br. at 16-17

(citing *Nolley v. Swiss Reins. Am. Corp.*, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012)). Just as

Plaintiff has not rebutted Defendants' non-discriminatory bases for her termination in connection

with her discrimination claim, Plaintiff also offers no evidence to rebut Defendants' evidence

that it was the same non-discriminatory reasons, and not her EEOC charges, that led to Plaintiff's

termination.

Plaintiff offers no evidence, as she must, to establish that her protected conduct was the

"but-for" cause of her termination, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360

(2013), and has failed to rebut Defendants proffered non-discriminatory reasons for her

termination, which is supported by record evidence. Accordingly, there are no triable issues of

fact and Plaintiff's claim fails as a matter of law. Defendants are entitled to summary judgment

dismissing Plaintiff's retaliation claim.

**C.      *Plaintiff's State Law Discrimination Claims are Dismissed***

Defendant is entitled to summary judgment with respect to Plaintiff's NYSHRL and

NYCHRL claims for substantially the same reasons discussed above with regard to dismissal on

summary judgment of Plaintiff's Title VII claims. Discrimination claims under the NYSHRL

and NYCHRL generally are subject to the same standards as claims under Title VII. *Salamon v.*

*Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (Courts "treat Title VII and

[NYSHRL] discrimination claims as analytically identical, applying the same standard of proof

to both claims"); *Olsson v. ABM Taxi Dispatch Laguardia Airport*, 2020 WL 5038742, at *4-5

(S.D.N.Y. Aug. 26, 2020) ("Claims of discrimination under the NYSHRL are analyzed under the

same standard as a Title VII claim." (internal citations omitted)); *Gordon v. City of New York*,

No. 14-cv-06115 (JPO), 2015 WL 3473500, at *11 (S.D.N.Y. June 2, 2015) ([NYCHRL] claims

are analyzed under the same standard as Title VII, § 1983, and [NYSHRL] disparate treatment

claims.").  However, under the NYCHRL, Plaintiff need not show an "adverse employment

action," but only that she "has been treated less well than other employees because of her

[protected status]."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d

Cir. 2013).  The NYCHRL similarly imposes a lower standard for proving retaliation, demanding

that Plaintiff show only that her employer "engaged in conduct that was reasonably likely to

deter a person from engaging in [protected reporting]."  *Id.* at 112.   However, in all

circumstances, Plaintiff must provide evidence that she was subjected to "unwanted *gender-*

*based* conduct."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011)

(emphasis added) (quoting *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 75, 872

N.Y.S.2d 27, 38 (1st Dep't 2009)).

      Because claims under the NYSHRL are analyzed under the same standards as those that

govern Title VII claims, Defendants are entitled to summary judgment dismissing all of

Plaintiff's NYSHRL claims here for the same reasons as related to Plaintiff's Title VII claims.

While Plaintiff's NYCHRL claims are subject to lower standards in certain respects with regard

to certain elements, as a threshold matter, Plaintiff still must provide evidence that any negative

employment actions were motivated by her gender.  *See* N.Y.C. Admin. Code § 8-107(1)(a) ("It

shall be an unlawful discriminatory practice [f]or an employer or an employee or agent thereof,

*because of the . . . gender . . . of any person*, to refuse to hire or employ or to bar or to discharge

from employment such person or to discriminate against such person in compensation or in

terms, conditions or privileges of employment." (emphasis added)); *New York City Housing*

*Authority*, 61 A.D.3d at 78, 872 N.Y.S.2d at 39 (To establish a gender discrimination claim

under the NYCHRL, the plaintiff needs to demonstrate "by a preponderance of the evidence that

she has been treated less well than other employees *because of her gender.*" (emphasis added)).

As discussed previously, Plaintiff has failed to present admissible evidence that the negative

actions of which she complains (negative performance reviews, the closure of Crotona Academy, and her termination) were caused, even in part, by her gender.  As a result, the Court must enter judgment for Defendants, dismissing Plaintiff's state law claims as well.

**D.      *Plaintiff's Section 1983 Retaliation Claim is Dismissed***

To establish a claim of retaliation under Section 1983, a plaintiff must show that "(i) the alleged deprivation was committed by a person acting under color of state law and (ii) this person violation a right secured by the Constitution."  *Williams*, 2019 WL 4393546, at *15 (citing *Vega*, 801 F.3d at 87-88).  The second prong of the claim is analyzed under an identical standard to that governing Title VII claims.  *Vega*, 801 F.3d at 82 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)).  Plaintiff's Section 1983 claim based on retaliation also survived Defendants' motion to dismiss because, at that stage, Plaintiff's allegations were found sufficient to plausibly support a Title VII claim.  However, with the benefit of the record established through discovery, the Court has found that there are no triable issues of fact underlying Plaintiff's Title VII claims as discussed above.  In light of that, Plaintiff's Section 1983 claim fails as well and Defendant is entitled to judgment as a matter of law.

**E.      *Plaintiff's Claims for Supervisory Liability Are Dismissed***

Finally, Plaintiff asserts two claims against the DOE for supervisory liability under Section 1983 and the NYCHRL.  Both claims fail here.[6]

---

[6] In her Opposition, Plaintiff seems to suggest (though it is not entirely clear) that Defendants have not moved for summary judgment on these claims.  *See* Opp. at 6.  This would mirror Defendants' failure to move to dismiss these claims in connection with their motion to dismiss.  *See Williams*, 2019 WL 4393546, at *4 ("Defendants now move to dismiss most of the complaint [because] . . . Williams fails to state a plausible claim for relief as to all claims except Counts 4 (Section 1983 claim for supervisory liability against Rotondo) and 9 (supervisory liability against both Rotondo and DOE under NYCHRL § 8-107(13)(b))").  However, Defendants' Summary Judgment Motion clearly seeks dismissal of *all* of Plaintiff's claims.  *See* Notice of Motion for Summary Judgment, ECF No. 56, at 1; Def. Br. at 1.  More importantly, the Court's decision regarding Plaintiff's claims for supervisory liability largely are determined by the Court's conclusions regarding her substantive discrimination claims.  As a result, and because it is clear that both Parties had an opportunity to address the claims if they chose, the Court considers the claims here.

As an initial matter, supervisory liability claims under both Section 1983 and NYCHRL require that a plaintiff prove that the supervisor knew or should have known about the alleged discriminatory conduct. *See D.H. v. City of New York*, 309 F. Supp. 3d 52, 80 (S.D.N.Y. 2018) (dismissing supervisory liability claims under Section 1983 where "there is no indication that they should have known that defendants under their supervision had violated plaintiffs' rights."); N.Y.C. Admin. Code § 8-107(13)(b)(2) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where . . . [t]he employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action . . ."). Plaintiff has not established that the DOE had any knowledge, or was negligent in not knowing, of any allegedly discriminatory actions. In fact, the only knowledge the Plaintiff imputes to the DOE is knowledge of Plaintiff's own alleged misconduct through the OSI investigation.[7] *See* Pl. 56.1 ¶ 4.1-4.6. This lack of knowledge is fatal to Plaintiff's supervisory liability claims.

Plaintiff's claims also fail on other grounds. First, binding precedent requires that a Plaintiff pursuing supervisory liability claims against government entities like the DOE under Section 1983 must assert liability under *Monell v. Department of Social Services.*, 436 U.S. 658 (1978), which requires that the challenged acts were done pursuant to an established governmental policy or practice. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (Section 1983 supervisory liability claims were dismissed because Plaintiff "failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as

---

[7] While the Court does not rely on Defendants' arguments that Plaintiff's claims fail because she failed to report any alleged discrimination through internal procedures, *see* Def Br. at 11-14, such actions would have been sufficient to meet Plaintiff's burden that the DOE have knowledge of allegedly discriminatory actions. Of course, in that circumstance, Plaintiff's claims still would fail for the other reasons outlined herein.

required to maintain a § 1983 action against a municipality." (quoting *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004))).  Here, Plaintiff has not attempted to make a showing under *Monell* and, thus, her supervisory liability claim under Section 1983 fails to raise a triable issue of fact and fails as a matter of law for that independent reason.

Second, the supervisory liability claim under the NYCHRL cannot survive absent a primary violation of the NYCHRL discrimination provisions.  Plaintiff brings her claim under NYCHRL § 107(13)(b).  That statute provides that a supervisory employer may be liable for "conduct of an employee or agent which is in violation of subdivision 1 or 2 [of the statute]."  N.Y.C. Admin. Code § 8-107(13)(b).  In turn, Sections 1 and 2 of the statute are the general anti-discrimination provisions of the NYCHRL.  *See* N.Y.C. Admin. Code §§ 8-107(1)-(2).  The plain meaning of this language requires that the Plaintiff establish a violation of the NYCHRL by some employee before supervisory liability will attach.  *Cf. Xiang v. Eagle Enters., LLC*, 2020 WL 248941, at *10 (S.D.N.Y. Jan. 16, 2020) (NYCHRL supervisory liability claims survive where there were "two violations of the NYCHRL by employees").  Here, because Plaintiff has not raised a triable issue of fact with respect to her NYCHRL claims and because the claims are deficient as a matter of law, her supervisory liability claims predicated on those NYCHRL violations fail as well.

The same analysis applies with regard to Plaintiff's Section 1983 supervisory liability claims.  Plaintiff's failure to sustain a primary civil rights violation claim precludes her claims for supervisory liability under Section 1983.  *See Melendez v. City of New York*, 2017 WL 4221083, at *6 (S.D.N.Y. Sept. 20, 2017) ("[S]ince the Court has dismissed all of Plaintiff's Section 1983 claims, there is no basis for asserting a supervisory liability claim.")

Because the supervisory liability claims suffer from multiple deficiencies, including Plaintiff's failure to show knowledge on the part of the DOE and her failure to establish

individual liability for discrete discriminatory acts, Defendants are entitled to summary judgment dismissing the supervisory liability claims.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to carry her burden to establish, through admissible evidence, a *prima facie* case of discrimination and to rebut Defendants' proferred non-discriminatory reasons for the allegedly adverse employment actions and her termination. She also has not provided evidence of a hostile work environment or adequately established supervisory liability on the part of the DOE.  As a result, Defendants' motion for summary judgment [ECF No. 56] is GRANTED.  The Clerk of Court respectfully is requested to enter judgment for Defendants on all claims and to close the case.


**SO ORDERED**

 **Date:  March 29, 2021**
 **New York, New York**                          **MARY KAY VYSKOCIL**
                                                  **United States District Judge**

25